## RASMUSSEN vs. McCABE.

JUSTICE'S COURT:   GARNISHMENT:   JUDGMENT.   *(1) Form of judgment in certain cases.   (2) The judgment against garnishee herein treated as one for damages.   (3) Such judgment erroneous but not void.*

1. In garnishment in justice's court, where the justice finds that the garnishee holds property of the principal defendant, subject to be delivered to him at a future day, the judgment should first direct a delivery of the property to the court at such future date, for plaintiff's benefit; and, upon the garnishee's failure to so deliver it, judgment should go against him for the value.   R. S., ch. 120, secs. 127-8.
2. The record of a justice's judgment against garnishees was: " Court orders that garnishees deliver said property into court on the first day of February, 1873, to be applied in judgment recovered by," etc., [naming the parties to the principal action].   "Damages, $60; costs on garnishee, $3.59, on original, $20.38."   *Held*, that this must be treated as a judgment against the garnishee for *damages*.

3. Where a J. P. having jurisdiction of a proceeding in garnishment, and of the parties, errs in his construction of the garnishee's answer, or in rendering judgment against him for *damages*, upon which execution is issued against the garnishee's goods, and the chattel claimed to belong to the principal defendant sold thereon, such judgment is merely erroneous, and *not void*; and title to the chattel passes by the execution sale.

APPEAL from the Circuit Court for *Winnebago* County. Action by *O. Rasmussen*, for the conversion of a wagon. Complaint in the ordinary form in trover. The answer, after a general denial, alleged in substance, that the wagon had been, on the 21st of December, 1872, duly adjudged to be the property of one Miller, in garnishee proceedings against the present plaintiff and one A. Rasmussen, after an execution on a judgment against Miller had been returned unsatisfied; that the judgment against the garnishees directed them to deliver the property into court on the 1st of February, 1873, to be applied on the judgment against Miller; and that afterwards the sheriff duly levied upon and sold the wagon upon said execution. It appeared on the trial, that the defendant *McCabe*, and one Kipes, recovered a judgment in justice's court against Miller for $15.58, damages and costs; that in November, 1872, an execution against Miller was issued upon the judgment, which was returned on the 25th of that month, with the officer's certificate that he could not find property sufficient to satisfy it. The docket of the justice was put in evidence to show the garnishee proceedings thereupon had against the present plaintiff and A. Rasmussen. After reciting said execution and the return thereof, it contained the following entries:

"Nov. 25, 1872. On affidavit of *John McCabe*, one of the plaintiffs in the aforesaid case, on file, garnishee summons issued by J. M. White, deputy sheriff, returnable December 21, 1 P. M ., at my office in said town.

"Nov. 25, 1872. Garnishee summons duly returned by J. M. White, deputy sheriff. All the property and effects in the

hands of A. Rasmussen, garnishee, belonging or due to D. C. Miller, defendant, levied upon and attached by J. M. White, deputy sheriff, and said garnishee summoned to appear before the justice on the 21st day of December, 1872, at 1 P. M., to answer touching his liability as garnishee. Summons served on garnishee Nov. 25, 1872.

"Dec. 21, 1872, 1 P. M. Suit called, and parties appeared and answered. Defendant A. Rasmussen sworn as garnishee; testimony on file. Garnishee sworn: he and *O. Rasmussen* were owing D. C. Miller a lumber wagon, to be delivered February 1, 1873, for the value of $60. Court orders that garnishees deliver said property into court on 1st day of February, 1873, to be applied in judgment recovered by *John McCabe* and Peter Kipes against D. C. Miller. Damages, $60; costs on garnishee, $3.59, on original, $20.38. [Signed by the justice.]

"April 21, 1873. Execution returned satisfied in full by J. M. White, deputy sheriff.

"Above judgment paid and discharged in full April 21, 1873. Received my costs. [Signed by the justice.]

"Received my costs on above judgment, April 21, 1873. J. M. WHITE."

The affidavit by which the proceedings in garnishment were commenced, was as follows:

"In Justice Court, before J. H. Merrill, Justice.

"*John McCabe against D. C. Miller.*

"WINNEBAGO COUNTY — Town of Winneconne — ss.

"*John McCabe*, being duly sworn, says that he has good reason to believe that A. & O. Rasmussen has property, that is to say, money or credit in his possession belonging to D. C. Miller, the defendant, or that the said O. & A. Rasmussen is indebted to the said D. C. Miller, the defendant; and this deponent demands of J. M. White, deputy sheriff, that he summons the said O. & A. Rasmussen, in writing, to answer as garnishee in the suit of *John McCabe* against D. C. Miller."

Attached to the foregoing affidavit, and forming a part of the same exhibit, there is found in the record the following certificate: "State of Wisconsin, County of Winnebago, ss. I hereby certify that I did, on the 25th day of November, 1872, at the town of Winneconne, in said county, personally serve on A. Rasmussen and *O. Rasmussen*, the garnishee defendants within named, whom I know, a true copy of a summons, the same as required to do in case of a garnishee on attachment, by handing to and leaving with them a true copy of such garnishee summons. I further levied upon and attached all the property, money, effects, credit or indebtedness in the hands or possession of said A. and O. Rasmussen, belonging to the defendant D. C. Miller, and personally summoned the said O. and A. Rasmussen as garnishees as aforesaid, to appear before the justice on the return day of the execution, and answer under oath touching their liability as garnishee of D. C. Miller." [Signed by the officer.]

The summons and attachment which seems to have been issued upon the affidavit, was addressed to O. and A. Rasmussen, and recited that an execution had been issued by said justice returnable on the 21st of December, 1872, in favor of *John McCabe* and Peter Kipes, plaintiffs, and against D. C. Miller, defendant, and that *McCabe* had made oath that the garnishees, and each of them, were indebted to said Miller, or had property, effects or credits in their hands or possession belonging to him. In other respects it appears to comply with the form prescribed by the statute (Tay. Stats., 1376, § 121, and 1395, § 216).

The answer of the garnishee under oath, as shown by the record in the justice's court, was as follows:

"*John McCabe* against A. Rasmussen & Co.

"A. Rasmussen sworn: I know D. C. Miller. I am not owing him anything. I am a blacksmith. I bought him out; on shop paid him $40, and was to make a lumber wagon by February 1, 1873. I was to make that for a man in Win-

chester.   Miller told me he was owing that man, and he wanted
the wagon paid to him.                    A. RASMUSSEN."

It appears that on failure of the Rasmussens to deliver the
wagon on the 1st of February, 1873, the justice issued an ex-
ecution, dated April 3, 1873, which, omitting the formal parts,
was as follows: "Whereas, judgment against A. & O. *Ras-
mussen*, garnishee, for the sum of $60, lawful money of the
United States, and for $3.59 costs of suit, was recovered the
21st day of December, 1872, before me, at the suit of *John
McCabe* and Peter Kipes, these are therefore to command you
to levy distress on the goods and chattels of said A. & O. Ras-
mussen, garnishee (exempting such as the law exempts), and
make sale thereof according to the law in such case provided, to
the amount of said sums, with interest thereon, together with
twenty-five cents for this execution, and the same to return to
me within thirty days, to be rendered to the said *John McCabe*
and Peter Kipes, for this judgment and costs."

It further appears, that by the direction of *McCabe*, the dep-
uty sheriff levied upon the wagon here in question by virtue of
this execution (it being the same wagon previously attached
by the deputy sheriff, and referred to in the justice's judg-
ment in the garnishee proceedings); and that he sold it for
$36, returning the money into court with the execution satis-
fied in full.

The testimony of the plaintiff, on the trial of this action,
tended to show that, on buying the blacksmith shop of Miller
for $120, he paid Miller $40 in cash, and gave him his (plaint-
iff's) note for $80, payable to one Gou, to whom Miller was
indebted, and who still held the note; and that the wagon in
question was made for Gou in pursuance of the agreement
then made, and was worth $75 or $80, but had never been
finished or delivered to any person before its seizure by the
sheriff.

The court appears to have rejected the summons in garnish-
ment, the justice's judgment against the garnishees, and the

execution of April 3, 1873, issued thereon; and it found, among other things, that "no judgment was ever rendered against *O. Rasmussen*, this plaintiff, either jointly with another or severally, as garnishee or otherwise, for any sum of money whatever;" that the wagon was worth $60; and that it was wrongfully taken by defendants on the 21st of April, 1873, as alleged in the complaint. Judgment was accordingly rendered in plaintiff's favor for $60 and costs; from which defendants appealed.

For the appellants, a brief was filed by *Charles W. Felker*, and the cause was argued orally by *Charles Barber*. They contended, among other things, that the affidavit and summons in garnishment substantially complied with the statute (Tay. Stats., 1395, §§ 215, 216, and 1376, § 121); that, if otherwise, no objection was taken before the justice to his jurisdiction; that the justice's judgment was also in substantial compliance with the statute (Tay. Stats., 1379, § 134); that all irregularities in the proceedings were waived by the failure of the garnishees to object or to appeal *(Rector v. Drury*, 3 Pinney, 298), and the judgment was conclusive between the parties and privies thereto; and that title to the wagon was in Miller, and any irregularity in the subsequent proceedings was of no consequence in this action.

*H. B. Jackson*, for the respondent, argued, among other things, 1. That the answer did not state a defense. How could the property be sold in February, 1873, upon an execution which had been returned November 25, 1872? How could a money judgment be rendered against the garnishee, on the day last named, for the value of property which he was not ordered to deliver before February 1, 1873? R. S., ch. 120, sec. 128. And after a judgment against the garnishee, how could his property be sold on an execution against Miller, as alleged in the answer? 2. That if the answer did not state a defense, the judgment for the plaintiff must be affirmed, whatever errors may have been committed, plaintiff having

objected to the introduction of any evidence under the answer. *K—— v. H——*, 20 Wis., 239; *Gaston v. Owen* [*ante*, p. 103]. 3. That the so-called judgment in garnishment was properly rejected, because it was immaterial under the pleadings, and also because it furnished no ground for the so-called execution of April 3, 1873, offered in evidence. 4. That the affidavit for garnishment was immaterial if the judgment in garnishment was so; and besides, it purported to be made in an action by *McCabe alone* against Miller, which was not the action set up in the answer or otherwise relied upon; and *it* failed also to comply with ch. 161, Laws of 1871, which requires such an affidavit to state that the property, etc., mentioned therein "are not by law exempt," etc. 5. That the summons in garnishment set out in the record was based upon the defective affidavit, and was invalid for that reason; and there is no proof that it was ever served. What appears in the record as possibly intended for a return to this writ, does not show what the writ served in fact contained, and does not state that any summons in the garnishee proceedings was served on Miller as then required by ch. 161 of 1871. 6. That the execution of November 22, 1872, was void for "want of style," not running in the name of the state of Wisconsin (Const., art. VII, sec. 17), and because it commanded the sheriff to "levy distress," and was not in the form given in sec. 178, ch. 120; R. S. 7. That the execution of April 3, 1873, against the Rasmussens, was also void for want of style, and because it commands the officer to levy distress; because no judgment was shown authorizing such an execution (*Jansen v. Acker*, 23 Wend., 480); and because there was nothing in the answer to which it was relevant.

RYAN, C. J. It was error to exclude the justice's judgment against the garnishees on the judgment of *McCabe v. Miller*.

It might tax the ingenuity of most justices of the peace to produce a more confused or eccentric docket of a proceeding

and judgment. But a judgment was rendered by the justice here, within his jurisdiction, however erroneous.

The affidavit on which the garnishees were summoned appears substantially to comply with the statute. The justice's docket shows that they were duly summoned and appeared. Having thus acquired jurisdiction of the subject and of the persons, the justice took with it power, under certain contingencies, to render judgment against them for the value of the chattel; as would be his duty at proper time and in proper circumstances. He may have misconstrued their answers; if so, that was error. He undoubtedly rendered judgment for damages against them improperly. He should first have directed their delivery of the chattel; and, upon their failure to deliver it, have rendered judgment for the value. He appears to have done both in a single judgment, on which execution was issued and the chattel sold. This was undoubtedly error; but it was error, so to speak, which the justice had jurisdiction to commit. The remedy of the garnishees was by appeal. The judgment was erroneous, but not void. The title to the chattel passed by the sale on the execution.

It has been said that the justice rendered judgment for damages against the garnishees. It is certainly not very technical in form. But technical accuracy in the judgments of justices is not to be looked for. If they should be held to a strict rule, perhaps but few of them could be sustained. The court must accept this judgment for what, on its face, it was plainly intended by the justice.

*By the Court.*— The judgment is reversed, and the cause remanded to the court below for a new trial.